## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES CLARK,

               Plaintiff,

          v.                                 Civil Action 03-02056  (HHK)

DISTRICT OF COLUMBIA,

               Defendant.

### MEMORANDUM OPINION

       Before the court is Defendant District of Columbia's motion for summary judgment [#165].  Upon consideration of the motion, the oppositions thereto, and the record of the case, the court concludes that the motion must be granted.

### I. BACKGROUND

       Plaintiff James Clark brings this lawsuit against the District of Columbia for violations of the D.C. Human Rights Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983. Am. Compl. ¶¶ 49, 53, 55.  The case arises out of the January 2002 termination of Clark's employment with the District's Department of Corrections.  Clark's allegations are as follows:

       Clark, a 66-year-old Black man, was employed by the Department of Corrections for eighteen years. *Id.* ¶ 2.  In February 1998, complaints were raised about Clark's behavior on the job, particularly by mental health professionals in the Department's office of Mental Health Services. *See* Pl.'s Opp. to Def.'s Mot. to Amend Admissions Exs. [#192-2] at 11–13, 35–37 (Balaran Ltr. to Valentine, Jan. 30, 1998; Weisman Ltr. to Shansky, Feb. 2, 1998; Shansky Ltr. to Moore, Feb. 2, 1998; Schneider Ltr. to Moore, Mar. 27, 1998); Pl.'s 2nd Opp. to Def.'s Mot. for

Summ. J. ("Pl.'s 2nd Opp.") Exs. [#182-4] at 8 (Shansky Mem. to Valentine, Jan. 30, 1998).[1]

Nearly a year later, in January 1999, Clark was transferred from the Department's Central

Detention Facility ("CDF") to its Lorton facility, apparently at the behest of members of the

Mental Health Services group.  Am. Compl. ¶¶ 11, 15, 25, 55; Pl.'s 2nd Opp. at 4.

In addition to claiming that this transfer was discriminatory and in violation of his rights,

Clark also raises a series of other claims:  He alleges that his promotion from the rank of

lieutenant to captain was delayed, and that in August 2000, his employment was involuntarily

converted from a career service position to an at-will Management Supervisory Services

("MSS") position, despite his rejection of the District's offer to accept the conversion.  Am.

Compl. ¶ 20.  Clark alleges that in November 2001, he was re-assigned to work in the Central

Detention Facility, but was told by a prison official that the CDF was not prepared for him yet,

and sent him back to Lorton.  *Id.* ¶¶ 28, 41.  He was also given an admonition and demoted on

December 29, 2001, or January 1, 2002.  *Id.* ¶ 26; Def.'s Mem. in Supp. of Mot. for Summ. J.

("Def.'s Mem. in Supp.") Ex. H (Dep. of Clark).  Shortly thereafter, in January 2002, his

employment was terminated.  Am. Compl. ¶ 29; Def.'s Mem. in Supp. Ex. F (Washington Ltr. to

Clark, Jan. 2, 2002).  Three months later, Clark applied to be re-hired for an open captain-level

position, but the position was cancelled.  *Id.* ¶ 39, 50.  Clark alleges that each of these actions

was motivated by racial, sex, and/or age-based animus, in violation of Title VII and the D.C.

---

[1] Because the court has difficulty discerning Clark's method for marking exhibits, and because many of his exhibits have been filed in bulk in large single batches of documents, the court will refer in this opinion to the page numbers (assigned by the court's "ECF" system) on which the exhibits appear.

Human Rights Act, and that the District's actions violated the Constitution's guarantees of equal treatment and due process.

The District's motion for summary judgment argues that a number of Clark's claims fail, either because he failed to administratively exhaust them or because they are time-barred. The District also argues that all of Clark's claims fail on the merits.

## II.  ANALYSIS

### A.      Standard of Review

The court reviews motions for summary judgment to determine whether "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Evidence is to be viewed "in the light most favorable to the nonmoving party, draw[ing] all reasonable inferences in its favor, and eschew[ing] making credibility determinations or weighing the evidence." *United States v. Project on Government Oversight*,  454 F.3d 306, 308 (D.C. Cir. 2006).

### B.      Title VII

Clark brings a series of claims under Title VII of the Civil Rights Act of 1964.  A court has authority over Title VII claims only if those claims are "(1) contained in the plaintiff's administrative complaint or [are] 'like or reasonably related to' those claims in the administrative complaint and [are] (2) claims for which the plaintiff exhausted administrative remedies." *Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 51 (D.D.C. 2006) (citing *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)); 42 U.S.C. § 2000e-5(f)(1) (permitting a civil action only after

3

an administrative charge has been filed and either the EEOC has dismissed the charge or taken

no action and issued a right-to-sue letter).  Exhaustion requires filing a charge with the Equal

Employment Opportunity Commission ("EEOC") and receipt of a right-to-sue letter:  "Only after

the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a

civil action within the requisite time period can that person bring a civil action herself."  *Park*, 71

F.3d at 907; 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of [a notice of

right to sue] a civil action may be brought against the respondent named in the charge.").  A

Title VII plaintiff also must comply with rules regarding timeliness of her claims.  An aggrieved

person must file an EEOC charge regarding a violation of Title VII within 180 days of that

violation, or, if the person first seeks redress with a state or local authority, the charge may be

filed within 300 days of the alleged violation.  42 U.S.C. § 2000e-5(e)(1).  The defendant bears

the burden of proving by a preponderance of the evidence that the plaintiff failed to exhaust

administrative remedies.  *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

> **1.     Clark's Claims**

Clark claims he submitted three separate charges to the EEOC: one in April 1998, another

in February 2002, and a third in October 2002.  Am. Compl. ¶ 45; *see* Pl.'s 2nd Opp. Exs.

[#182-3] at 11 ("1998 EEOC Charge"); Pl.'s 1st Opp. Exs. [#174] at 4 ("Feb. 2002 EEOC

Charge"); Def.'s Reply Ex. D ("Oct. 2002 EEOC Charge").  He only alleges receipt, however, of

a single right-to-sue letter, in July 2003.  Am. Compl. ¶ 46.   The District argues that the only

charge Clark submitted in 2002 was the October 2002 charge, noting that no records of any

February 2002 complaint by Clark exists, and that the document Clark filed which purports to be

the February 2002 EEOC filing, was not actually filed with the EEOC and may have been forged.

Def.'s Reply at 1 & n.1.  The District also argues that the only right-to-sue letter Clark has

produced is one issued for the October 2002 EEOC charge.  *Id.* at 2.  Clark argues that a charge

was lodged in February, as alleged in the amended complaint, but that the EEOC informed him

that the February charge was lost by the agency and asked him to re-file it.  Pl.'s 2nd Opp. at 7.

   While the court is skeptical of the validity of the purported February EEOC filing, it

cannot conclude for purposes of summary judgment that Clark did not at least attempt to lodge

the document as he alleges.  Nonetheless, as the government has argued, Clark has only alleged

receipt of a single *right-to-sue letter*, and that letter relates only to the October 2002 EEOC

filing.  Def.'s Reply at 2.  Thus the court will deem exhausted only those claims related to the

October filing.

   Given this limitation on the court's ability to review Clark's claims, all allegations

relating to events occurring prior to April 2002 (six months before Clark filed his EEOC charge)

are not exhausted, and therefore may not be reviewed by the court.  These events include his

transfer to Lorton, which occurred in January 1999, the alleged delay in his promotion to Captain

(he was promoted in June 1999, which promotion was made retroactively effective as of June

1997), and the conversion of Clark's job status from career service to MSS, which occurred in

August 2000.

   Clark's allegation that he was denied access in November 2001 to the CDF, despite

orders from authorities that he be re-assigned to work there, is time-barred, as well.  He did

address this event in his October 2002 EEOC charge, but that charge was filed almost a year after

the alleged transfer refusal, well beyond the applicable 180-day window.

Clark's further allegation that he was demoted in December 2001 or January 2002 falls within the 180-day period applicable to his alleged February 2002 EEOC filing (but not to the applicable period for the October 2002 filing), but this claim was not exhausted because, even if the February 2002 charge were deemed filed, the alleged demotion is not related to the allegations Clark raises in the charge.  The purported February filing deals only with the termination of Clark's employment and allege mismanagement of the District.  It does not refer to any demotion.  In any event, Clark has not identified nor produced a right-to-sue letter covering the demotion allegation.

Finally, Clark's claim that he was terminated because of his race, age, and sex, is also not exhausted.  The termination occurred in January 2002, but Clark did not file with the EEOC until October 2002.

The one claim which Clark has exhausted is his claim that the District failed to rehire him in April 2002, when he applied for an open captain-level position.  This claim was timely raised in the October EEOC charge, and is covered by the July 11, 2003, right-to-sue letter.  The claim is without merit, however, as Clark's own filings establish that the reason he was hired was not discriminatory: as Clark admits, the position was cancelled.  Pl.'s 2nd Opp. at 14; Pl.'s Opp to Def.'s Mot. for Ext. Exs. [#187-2] at 19 (Notice of Status of Employment Application, May 20, 2003).

### 2.        The "Continuing Violation" Theory

In an effort to overcome the procedural obstacles to his claims, Clark alleges that these various actions constitute a "continuing violation" of Title VII.  *Id.* at 10.  The court disagrees. His complaint is one of disparate treatment, not of a hostile work environment—Clark does not

dispute the District's argument drawing this distinction—and each event about which he complains is a discrete act.  As the Supreme Court has explained, "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.  Each discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Under *Morgan*, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Id.* at 114.  Clark's allegations, therefore, constitute separate actionable unlawful employment practices, which cannot be lumped together for purposes of evading Title VII's exhaustion requirements.

## C.    Claims Under 42 U.S.C. § 1983

In addition to his Title VII claims, Clark alleges that the District violated his due process rights and seeks relief pursuant to 42 U.S.C. § 1983.   Before turning to the merits of any of these claims, the court notes that a three-year statute of limitations is applicable to § 1983 claims in the District of Columbia.  *See Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 577 n.1 (D.C. Cir. 1998) (three-year statute of limitations in the District of Columbia for sections 1981 and 1983); D.C. Code 12-301(8) (setting the residual limitation on actions for personal injury at three years). Thus, all claims that accrued prior to October 7, 2000 (three years prior to Clark's filing of his complaint) are time-barred.  These include his promotion delay claim (1999), his claim that he was unlawfully transferred to Lorton (1999), and his conversion from career service to MSS (August 2000).  His claims that are not time-barred include the alleged refusal to allow him to work at CDF in November 2001, his demotion from DS-11 to DS-10, the termination of his employment, and the District's failure to re-hire him in April/May 2003.

7

As to the remaining claims, Clark has failed to identify a custom or policy established by the District which violated his rights.  A policy can be set by a municipality such that § 1983 liability may exist in a number of ways: the policy may be explicit, it may be the result of the actions of a policy maker within the government, it may be adopted through a consistent knowing failure to act by a policy maker to correct actions taken by subordinates, or it may be created by the failure of the municipality to respond to a need, such as that for the training of employees. *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003).  Clark has failed to demonstrate the existence of a policy depriving him of his rights as to any of his claims.

The decision to deny him access to CDF was apparently a single incident, informed not by a District policy, but rather by the ministerial decisionmaking of a subordinate employee who claimed that CDF was not prepared to receive Clark.  Am. Compl. ¶ 41.  Indeed, accepting as true Clark's allegation that the refusal to grant him access to CDF was in violation of contrary orders from higher authorities, the court must conclude that the incident was definitively not a result of District policy.  The decision to demote Clark from DS-11 to DS-10 was likewise not the result of any policy Clark has identified.  It was a discrete administrative act, directly involving allegations of wrongdoing by Clark and not implicating any broad District policy.[2]

The termination of Clark's employment was, in Clark's view, part of an overall policy of favoring White employees over Black employees.  As the District points out, however, Clark's employment was at will, and he had no continuing property interest in continued employment with the District.  Without such an interest, he can claim no violation of his due process rights.

_____

[2] For purposes of the present motion, the court rejects the District's argument that the demotion was not effectuated.

*Orange v. Dist. of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995); *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) ("[T]hose who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."). The District has also shown that the termination resulted from the closure of the Lorton facility and not from any wrongful or discriminatory policy.  Def.'s Mem. in Supp. at 15–16 & Ex. F. Finally, Clark's claim that the District violated his constitutional rights when it did not re-hire him fails because not only has he not articulated or shown any policy violating his rights related to the decision not to hire him, but he also concedes that the position was cancelled.  Am. Compl. ¶¶ 39, 50, 56; Pl.'s 2nd Opp. at 14; Pl.'s Opp to Def.'s Mot. for Ext. Exs. [#187-2] at 19.

D.      **D.C. Human Rights Act**

In addition to his Title VII and § 1983 claims, Clark brings claims under the D.C. Human Rights Act, D.C. Code §§ 1-2501 *et seq.* (1981 ed.).  These claims are barred.  During the time the alleged events took place, a District employee's only remedies were those administrative remedies provided for by the Act.  Bringing a civil action was foreclosed.  *See Williams v. Dist. of Columbia*, 467 A.2d 140, 142 (D.C. 1983) (only the administrative remedies provide for by the DCHRA are available to District employees; a civil action is only available to non-government employees).

**III. CONCLUSION**

For the forgoing reasons, the court determines that the District's motion for summary judgment [#165] must be GRANTED.  An appropriate order accompanies this memorandum opinion.

> Henry H. Kennedy, Jr.
> United States District Judge

Dated: November 6, 2006